# EXHIBIT B

# COMPLAINT TO TRANS UNION, LLC

KAREN INFANTE ALLEN
TRUMBULL CO CLERK OF COURTS
2020 CV 01171
FILED: 10/13/2020 03:12 PM

## IN THE COURT OF COMMON PLEAS
## TRUMBULL COUNTY, OHIO

David Collins
c/o Zuzolo Law Offices
700 Youngstown Warren Rd
Niles, Ohio 44446

   Plaintiff,

v.

Experian Information Solutions, Inc.
c/o Statutory Agent CT Corporation System
4400 Easton Commons Way, Suite 125
Columbus, OH 43219

Equifax Information Services LLC
c/o Statutory Agent Corporation Service
Company
50 West Broad St., Suite 1330
Columbus, OH 43215

Trans Union LLC
c/o Statutory Agent The Prentice-Hall
Corporation System, Inc.
50 West Broad Street, Suite 1330
Columbus, OH 43215

U.S. Bank National Associated dba Registered
Trade Name Elan Financial Services
c/o Statutory Agent U.S. Bank National
Association
425 Walnut Street
Cincinnati, OH 45202

   Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

Case No.:

Judge

**COMPLAINT**

**JURY DEMAND ENDORSED
HEREON**

Now comes Plaintiff, David Collins, by and through counsel, and hereby states his

Complaint as follows:

1

## PARTIES

1. Plaintiff, David Collins ("Plaintiff" or "Mr. Collins"), is a natural person who resides in Trumbull County, Ohio. Plaintiff is a "consumer" as that term is defined under the Fair Credit Reporting Act ("FCRA").

2. Defendant, Equifax Information Services LLC ("Equifax"), is a foreign corporation doing business in the state of Ohio. Equifax is a consumer reporting agency as defined by Section 1681(f) of the FCRA, in that Equifax regularly engages in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports to third parties, as defined in Section 1681a(d) of the FCRA.

3. Defendant, Experian Information Solutions, Inc. ("Experian"), is an Ohio corporation. Experian is a consumer reporting agency as defined by Section 1681(f) of the FCRA, in that Experian regularly engages in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports to third parties, as defined in Section 1681a(d) of the FCRA.

4. Defendant, Trans Union LLC ("TransUnion"), is a foreign limited liability company doing business in the state of Ohio. Transunion is a consumer reporting agency as defined by Section 1681(f) of the FCRA, in that Trans Union regularly engages in the business of assembling, evaluating, and dispersing information concerning consumers for the purpose of furnishing consumer reports to third parties, as defined in Section 1681a(d) of the FCRA.

5. Defendant, U.S. Bank National Association dba Elan Financial Services ("Elan Financial"), is a furnisher of information as defined by the Fair Credit Reporting Act.

## JURISDICTION AND VENUE

2

6. Jurisdiction and venue are proper in this judicial district as Plaintiff resides in and many of the facts relevant to this Complaint occurred in this judicial district.

## STATEMENT OF FACTS

7. Plaintiff had a credit card account with Home Savings.

8. Upon review of Mr. Collins' January 2019 statement, he discovered several fraudulent charges, all of which occurred in Canada in or around December 2018 through in or around January 2019.

9. Upon discovery of these charges, Mr. Collins contacted Home Savings and disputed the charges.

10. The February 2019 Home Savings statement shows two payments credited to the account, each in the amount of $7,000. Mr. Collins notified Home Savings that he did not make or authorize these payments on his account.

11. On January 22, 2019 and January 23, 2019, Home Savings sent correspondence to Mr. Collins indicating that it had finalized provisional credits that were issued to his account in the approximate amounts of $9.98 and $7,576.54 due to the fraudulent charges.

12. On January 25, 2019, Home Savings sent another letter to Mr. Collins indicating that it had reviewed the payment of $7,000, and had issued a refund for $7,000.00 to the checking account ending in ▇▇▇▇

13. The checking account referenced in the January 25, 2019 letter did not belong to Mr. Collins, and Mr. Collins never received $7,000.00 from Home Savings.

14. Mr. Collins received a letter from Cardmember Service dated February 5, 2019, which stated that the account had been closed to any further activity.

15. Mr. Collins' continued receiving statements from Home Savings, which continued to reflect a balance including the fraudulent charges, as well as fees and interest, up until the January 2020 statement, which indicates again that Home Savings had closed the account.

16. Mr. Collins' received correspondence from Elan Financial—the owner and issuer of the credit card account—dated August 23, 2019, indicating that two payments for $7,000 each were processed on January 14, 2019, and that a request to return one of the payments for $7,000 was completed on January 25. The letter further states that on February 1, 2019, Elan Financial received notification from Plaintiff's financial institution that both payments for $7,000 were not authorized; therefore, the funds for both payments were taken back by the financial institution.

17. Elan Financial further indicates: "To clarify, your credit card account was credited $14,000 on January 14 and debited $21,000 between January 25 and February 1. . . [a]s a result of our research, we can confirm the balance reflected on your account is accurate."

18. Plaintiff received another letter from Elan Financial dated October 22, 2019, indicating that the Consumer Financial Protection Bureau had redirected Mr. Collins' complaint to Elan Financial.

19. Plaintiff received correspondence from Elan Financial dated December 10, 2019, in which Elan Financial confirmed that the charges on Plaintiff's account were fraudulent and indicated that Plaintiff was not responsible for the balance on this account.

20. Plaintiff received correspondence from Elan Financial dated February 27, 2020, in which Elan Financial determined that an update to the consumer reporting agencies was appropriate: "We have requested the consumer reporting agencies update their records to

4

reflect updated account information, including removal of the delinquencies previously reported."

21. At all times relevant herein, until the balance owed on the account was brought to zero in or around December 2019, Plaintiff made each and every monthly payment on this account at least in the minimum amount required for the balance for which he was responsible. The amount Plaintiff was responsible for and for which he made monthly payments towards was approximately $975.00.

22. On October 8, 2019, Mr. Collins had sent a dispute letter to the three main credit reporting agencies, Trans Union, Equifax, and Experian, disputing the reporting of his Home Savings account due to the fraudulent charges and resulting balance reporting on the account.

<u>Equifax Correspondence</u>

23. Equifax's response to Plaintiff's first dispute letter, dated October 14, 2019, shows an account with Elan Financial Services reporting as 90-119 days past due, and a balance of $8,354.

24. On December 16, 2019, Mr. Collins sent another dispute letter to Equifax, disputing the incorrect balance reporting on the Elan Financial account on Mr. Collins' credit file.

25. Equifax sent correspondence to 700 Youngstown Warren Road, Niles, Ohio 44446—the address for Mr. Collins' counsel—dated December 24, 2019, stating that it required proof of social security number and proof of current address in order to locate the credit file in its database. However, the correspondence states that the item chosen for proof of address "**MUST** contain your current mailing address of 700 Youngstown Warren Rd, Niles, OH 44446-3552." This is not Mr. Collins' mailing address, but rather, the address of Mr. Collins'

counsel. Further, the correspondence is addressed to Ralph Zuzolo, a former attorney who used to work at Mr. Collins' counsel's firm.

26. Mr. Collins sent another dispute letter to Equifax dated January 15, 2020, disputing the personal information of Ralph Zuzolo and Mr. Collins' counsel contained in Equifax's response to Mr. Collins' previous dispute, and also stating that Equifax failed to respond to the December 2019 dispute letter.

27. Equifax responded, dated February 7, 2020, indicating that it had verified that the Elan Financial account belonged to Mr. Collins and had verified that the account was reported correctly. Equifax reported a high balance on the account of $8,679 and reported that the account was 150 days past due. Equifax made no mention of the incorrect personal information or the reference to "Ralph Zuzolo" contained in its December 24, 2019 correspondence. Further, Equifax did not include a full consumer disclosure with its response.

28. On April 7, 2020, Plaintiff sent another credit dispute letter to Equifax, again disputing reporting on his credit of the improper balance for the Elan Financial account. Plaintiff attached to this dispute the correspondence from Elan Financial and Home Savings in which they determined that the charges on this account were fraudulent and that Plaintiff was not responsible for the balance on this account.

29. Equifax's response dated April 18, 2020 states:

> "The disputed item is not currently on the Equifax credit file. **Company Name: Na Account Number** ▪▪▪▪
> The disputed item is not currently on the Equifax credit file. **Company Name: Na Account Number:** ▪▪▪"

30. Plaintiff did not dispute "Na Account Number ▪▪▪▪" or "Na Account Number ▪▪▪▪ Therefore, Plaintiff believes Equifax did not investigate his April 7, 2020 dispute.

31. Further, Equifax's April 18, 2020 response did not include a full consumer disclosure.

32. On May 4, 2020, Plaintiff sent a fourth dispute letter to Equifax, disputing Equifax's deficient response to his April 7, 2020 dispute, as well as the improper past due status and high balance of $8,679 reporting on his account.

33. Equifax's response dated May 22, 2020 states that the creditor is currently reporting a zero balance for this account, and the "additional information" section was updated to state "Closed or Paid Account/Zero Balance." However, the account still shows a high balance of $8,679, and is reported as 150 days past due as of November 2019.

34. As previously discussed herein, this high balance of $8,679 was attributable to fraudulent charges for which Home Savings and Elan Financial had indicated Plaintiff was not responsible for. Further, Plaintiff did not miss any monthly payments on this account. Therefore, Plaintiff was not past due on this account during the time which Equifax's report indicates the account was past due.

Experian Correspondence

35. Experian's response to Plaintiff's first dispute letter, dated October 23, 2019, shows an account with U.S. Bank/Elan Financial Services reporting as closed from February 2019 to May 2019, past due from June 2019 through September 2019, and with a balance of $8,354.

36. On December 16, 2019, Mr. Collins sent another dispute letter to Experian, disputing the incorrect balance reporting on the Elan Financial account on Mr. Collins' credit file.

37. Experian responded to Plaintiff's December 16, 2019 dispute on or around February 14, 2020, indicating that Elan Financial certified to Experian that the information reported was accurate, and therefore the item was not changed on Plaintiff's credit report.

38. Experian further responded, dated February 24, 2020, indicating that it had previously processed the same dispute, and that it would not reinvestigate Plaintiff's dispute. The response further stated:

> "**If you have additional relevant information** (anything new that has occurred between you and the credit grantor. . . that should result in a change to the information appearing on your credit report, such as a letter from the creditor. . .), **that was not presented when you previously disputed the information** you may mail it to us and we will reinvestigate the disputed information."

39. The Experian reports provided on both February 14, 2020 and February 24, 2020 reported the Elan Financial account as past due from June 2019 through December 2019, with a high balance of $8,679.

40. Therefore, Plaintiff then sent another credit dispute letter to Experian dated April 7, 2020, disputing the balance owed, attaching the correspondence from Home Savings and Elan Financial in which they determined that the charges were fraudulent and that Plaintiff was not responsible for the balance on this account.

41. Despite being provided this additional relevant information, Experian again asserted in its April 30, 2020 response to Plaintiff's dispute that the April 7, 2020 dispute was the same as a previously processed dispute and therefore it would not reinvestigate it without additional relevant information being provided.

42. Plaintiff sent a fourth credit dispute letter dated May 19, 2020 to Experian, incorporating his previous disputes and further disputing the improper past due status and high balance of $8,679 reporting on the account.

43. Experian sent correspondence dated June 15, 2020, indicating that it had reviewed the documentation provided with the dispute, but it had determined that it was not sufficient to

make the changes or deletions requested, and that it had forwarded the documentation to the furnisher of the information along with a description of the dispute.

44. Experian sent further correspondence dated June 23, 2020, including Plaintiff's credit report, and indicating that the Elan Financial Services account remained unchanged after processing Plaintiff's June 2020 dispute. However, the Experian report showed the account now reporting as "paid, closed/never late" with no past due status, and with the high balance of $8,679 remaining.

Trans Union Correspondence

45. Trans Union's response to Plaintiff's first dispute letter, dated October 13, 2019, shows the account with Elan Financial reporting as 90 days past due, with a balance of $8,354.

46. On December 16, 2019, Mr. Collins sent another dispute letter to Trans Union, disputing the incorrect balance reporting on the Elan Financial account on Mr. Collins' credit file.

47. Trans Union received the December 16, 2019 dispute letter on December 20, 2019. Plaintiff provided a copy of his photo identification card and a recent Dominion utility bill on January 15, 2020, which Trans Union received on January 21, 2020.

48. Trans Union indicated in correspondence dated January 24, 2020 that it was unable to locate a credit report for Mr. Collins, but that it would recheck its records if Mr. Collins would send additional verified information to Trans Union. Again, Mr. Collins had provided his photo ID and recent utility bill to Trans Union immediately prior to Trans Union's January 24, 2020 correspondence. Further, Trans Union had previously provided a credit report to Plaintiff. Therefore, Trans Union was incorrect in its assertion that it could not locate a credit file for Plaintiff.

49. On April 7, 2020, Plaintiff sent a credit dispute letter to Trans Union, disputing Trans Union's failure to provide a response to Plaintiff's December 16, 2019 dispute, as well as the improper balance reporting for the Elan Financial account on Plaintiff's credit. Plaintiff attached to this dispute the correspondence from Elan Financial in which they determined that the charges were fraudulent and that Plaintiff was not responsible for the balance on this account.

50. Trans Union's response dated April 30, 2020 indicates that the account was updated, and Trans Union appears to have removed the past due status from the Elan Financial account. However, Trans Union reported a high balance of $8,679. This high balance of $8,679 was attributable to fraudulent charges for which Home Savings and Elan Financial had indicated Plaintiff was not responsible for.

51. Further, Trans Union's response dated April 30, 2020 did not include a full consumer disclosure for Plaintiff.

52. Despite multiple credit dispute letters to Equifax, Experian, and Trans Union, this account is still reporting improperly on Plaintiff's credit file.

53. As a result of Equifax, Experian, Trans Union, and Elan Financial's repeated refusal to correct the account reporting on Plaintiff's credit, Plaintiff has suffered actual damages including, but not limited to, credit damage and costs for having to engage two sets of counsel for this lawsuit in order to correct objectively obvious errors, time and postage costs for sending multiple credit dispute letters, and the mileage and travel costs to his counsels' offices. Further, Plaintiff has suffered non-economic damages including, but not limited to, anger, frustration, embarrassment, stress, anxiety, and overall mental anguish due to, including but not limited to, Equifax asking him to prove he was someone completely

unrelated to this case in order to get his credit report fixed, this issue being unresolved for

well over a year despite multiple attempts to correct the account, and needlessly having to

engage counsel and take formal legal action just to get the facts of this case reviewed and

these objectively obvious errors corrected.

## COUNT I: FAIR CREDIT REPORTING ACT

54. Plaintiff alleges each and every preceding paragraph as if fully rewritten herein.

55. A "consumer reporting agency" is defined by the FCRA as follows:

> any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly
> engages in whole or in part in the practice of assembling or evaluating consumer credit
> information or other information on consumers for the purpose of furnishing consumer
> reports to third parties, and which uses any means or facility of interstate commerce for
> the purpose of preparing or furnishing consumer reports.
> *See* 15 U.S.C. § 1681a(f).

56. Equifax, Experian, and Trans Union are consumer reporting agencies as defined by Section

1681a(f) of the FCRA.

57. Section 1681*n* of the FCRA imposes civil liability on any CRA "who willfully fails to

comply with any requirement" of the Act. *See* 15 U.S.C. § 1681*n* (a).

58. Section 1681*o* of the FCRA provides for civil liability against any CRA which is negligent in

failing to comply with any requirement imposed under the Act.

## Failure to Conduct Reinvestigation: Equifax, Experian, Trans Union

59. The FCRA mandates that a CRA conduct an investigation of the accuracy of information

"[i]f the completeness or accuracy of any item of information contained in a consumer's file"

is disputed by the consumer. *See* 15 U.S.C. § 1681*i*(a)(1). The Act imposes a 30-day time

limitation for the completing of such an investigation. *Id.*

60. The FCRA provides that if a CRA conducts an investigation of disputed information and

confirms that the information is, in fact, inaccurate, or is unable to verify the accuracy of the

11

disputed information, the consumer reporting agency is required to delete that item of information from the consumer's file. *See* 15 U.S.C. § 1681*i*(a)(5)(A).

61. If any information is deleted from a consumer's file pursuant to this rule, "the information may not be reinserted in the file by the consumer reporting agency unless the person who furnished the information certifies that the information is complete and accurate." *See*, 15 U.S.C. § 1681*i*(a)(5)(B).

62. In the *Mullins v. Trans Union* trial in the Eastern District of Virginia in 2007, the Court instructed the Jury that:

> "ON SEVERAL OCCASIONS SINCE 1997, TRANS UNION HAS BEEN NOTIFIED BY THE DECISIONS OF FEDERAL COURTS THAT A REASONABLE REINVESTIGATION MUST CONSIST OF SOMETHING BEYOND MERELY PARROTING ITS FURNISHERS".

63. On several occasions, Plaintiff provided specific information to Equifax, Experian, and Trans Union, disputing that he was not responsible for the balance on the Elan Financial account. Plaintiff also specifically disputed that the high balance reporting on the account was improper, and the past due status was improper, as the balance on the account was attributable to fraudulent charges.

64. Despite Plaintiff's multiple disputes, Plaintiff's Equifax report still shows a high balance attributable to the fraudulent charges, as well as an improper past due status.

65. Despite Plaintiff's multiple disputes, Plaintiff's Experian report still showed an improper past due status for June through December 2019, until the most recent June 23, 2020 consumer report, and also a high balance which was attributable to the fraudulent charges.

66. Despite Plaintiff's multiple disputes, Plaintiff's Trans Union report still shows a high balance attributable to fraudulent charges which Plaintiff was deemed to not be responsible for. In

addition, despite Plaintiff's multiple disputes, Plaintiff's Experian and Equifax reports both still show high balances attributable to the fraudulent charges, as well as an improper past due status.

67. Equifax, Experian, and Trans Union either conducted no investigation or conducted such shoddy investigations that the improper credit reporting continued despite Plaintiff's multiple disputes.

68. Equifax, Experian, and Trans Union willfully and/or negligently failed to conduct a reasonable investigation in violation of Section 1681i.

69. As a direct and proximate result of Equifax, Experian, and Trans Union's willful and/or negligent refusal to conduct reasonable investigations as mandated by the FCRA and as outlined above, Plaintiff has suffered loss and damage including, but not limited to, financial loss, costs for having to engage two sets of counsel for this lawsuit in order to correct objectively obvious errors, time and postage costs for sending multiple credit dispute letters, and the mileage and travel costs to his counsels' offices, credit damage, expenditure of time and resources, mental anguish, humiliation, embarrassment and emotional distress due to, including but not limited to, Equifax asking Plaintiff to prove he was someone completely unrelated to this case in order to get his credit report fixed, needlessly having to engage two sets of counsel to attempt to get this issue resolved, and this obvious issue being unresolved for well over a year despite multiple attempts by Plaintiff to correct the reporting of the account, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

**Failure to Provide Full Consumer Disclosure: Equifax and Trans Union**

70. 15 U.S.C. § 1681g mandates that a credit reporting agency provide a full consumer disclosure in response to a credit dispute letter.

71. Equifax failed to provide a full consumer disclosure pursuant to 15 U.S.C. § 1681g in response to Plaintiff's January 15, 2020 and May 4, 2020 dispute letters.

72. Trans Union failed to provide a full consumer disclosure pursuant to 15 U.S.C. § 1681g in response to Mr. Collins' December 2019 and April 2020 credit dispute letters.

73. As a direct and proximate result of Equifax and Trans Union's willful and/or negligent refusal to provide a full consumer disclosure in response to Plaintiff's disputes as mandated by the FCRA and as outlined above, Plaintiff has suffered loss and damage, including, but not limited to, mental anguish, anxiety, stress, and worry surrounding not knowing whether this account continued to improperly report on his credit, entitling him to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

## Failure to Conduct Reasonable Investigation Pursuant to § 1681s-2(b): Elan Financial

74. Plaintiff alleges each and every preceding paragraph as if fully rewritten herein.

75. The Fair Credit Reporting Act ("FCRA"), under 15 U.S.C. § 1681s-2(b), places a duty on the furnisher of information, after being put on notice by a credit reporting agency of a consumer dispute, to conduct a reasonable investigation into the accuracy of the information.

76. After receiving Mr. Collins' disputes, the credit reporting agencies were mandated by the FCRA to notify Elan Financial to either verify or investigate the disputed account. Based on the responses from Trans Union, Experian, and Equifax, Elan Financial verified to the credit reporting agencies that the full balance was properly owed by the Plaintiff, that the account

14

was past due, and that the high balance on Plaintiff's account of approximately $8,679 was proper.

77. Elan Financial failed to conduct a reinvestigation into the information it was reporting on the Plaintiff's credit as evidenced by the fact that Elan Financial continued to report a past due status on the account and continued to report the balance owed as including the fraudulent charges. Elan Financial had been on notice of Mr. Collins' disputes of the fraudulent charges. A basic investigation into the disputes would have uncovered that these charges were fraudulent and that Plaintiff was not responsible for them. In fact, Elan Financial itself acknowledged that Plaintiff was not responsible for these charges in its December 10, 2019 and February 27, 2020 correspondence to Plaintiff.

78. Further, Elan Financial failed to conduct a reinvestigation into the information it was reporting on Plaintiff's credit as evidenced by the fact that Elan Financial continues to report the high balance of $8,679, despite multiple disputes of this information by Plaintiff, and despite its own assertion in its February 27, 2020 correspondence to Plaintiff that it had requested the consumer reporting agencies update their records to reflect the updated account information.

79. As a direct and proximate cause of Elan Financial's willful and/or negligent refusal to conduct any type of reasonable investigation as mandated by the FCRA, Plaintiff has suffered actual damages including, but not limited to, needlessly hiring counsel to bring this action to get an objectively obvious issue corrected, and for credit damage. Further, Plaintiff has suffered non-economic damages including, but not limited to, mental anguish, anxiety, stress, and worry surrounding as a result of Elan Financial's blatant refusal to conduct an investigation into his disputes, including but not limited to, from needlessly having to engage

two sets of counsel to attempt to correct this issue, and from this obvious issue going unresolved for well over a year despite multiple disputes. This entitles Plaintiff to an award of actual damages in an amount to be proven at trial, punitive damages, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681o.

## TRIAL BY JURY

80. Plaintiff is entitled and hereby respectfully requests a trial by jury on each and every matter so entitled.  U.S. Const. Amend. 7.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, having set forth his claims against Defendants, respectfully prays of the Court as follows:

A. That Plaintiff have and recover against Defendants a sum to be determined by the Court in the form of statutory damages;

B. That Plaintiff have and recover against Defendants a sum to be determined by the Court in the form of actual damages in excess of $25,000;

C. Punitive damages as provided for in 15 U.S.C. § 1681n(a)(2);

D. That Plaintiff have and recover against Defendants all legal fees and expenses incurred by his attorneys;

E. That Plaintiff have such other and further relief as the Court may deem just and proper.

Respectfully submitted,

*/s/ Patrick B. Duricy*
Philip D. Zuzolo (0081865)
Patrick B. Duricy (0042511)
Zuzolo Law Offices, LLC
700 Youngstown Warren Rd
Niles Ohio 44446
330/652-1609 (p) / 330/652-9421 (f)
lawyers@zuzolo.com

16

## INSTRUCTIONS FOR SERVICE

Please serve a copy of the Summons and Complaint on all Defendants at the addresses listed above by certified mail, return receipt requested, pursuant to the Ohio Rules of Civil Procedure.

*/s/ Patrick B. Duricy*
Patrick B. Duricy (0042511)
Zuzolo Law Offices, LLC

17